IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 06-cv-01308-WDM-PAC

BECKIE GRABAU and DANIEL GRABAU,

    Plaintiffs,

v.

TARGET CORPORATION, a Minnesota corporation,

    Defendant.

---

RECOMMENDATION OF UNITED STATES MAGISTRATE JUDGE

---

O. Edward Schlatter, United States Magistrate Judge

Plaintiffs bring a premises liability claim against defendant Target Corporation ("Target") for damages sustained after a vacuum cleaner fell on Beckie Grabau from an upper shelf while she was shopping in a Target store in Superior, Colorado. An Order of Reference under 28 U.S.C. §636(b) referred this case to Magistrate Judge Patricia A. Coan on July 10, 2006 to conduct pretrial proceedings. Upon Magistrate Judge Coan's retirement, I assumed her caseload temporarily. The matter before the court is Plaintiffs' Motion for Leave to File Second Amended Complaint [Doc. #87; filed May 16, 2007]. The motion is fully briefed and I have determined that oral argument is not necessary.

Plaintiffs request leave of court to amend their complaint a second time to add a claim for exemplary damages against the defendant.

Recovery of exemplary damages is permitted in a civil action where the jury assesses damages for a personal injury, "and the injury complained of is attended by circumstances of fraud, malice, or willful and wanton conduct." COLO.REV.STAT.

("C.R.S.") §13-21-102(1)(a) (2005).[1] "[W]illful and wanton conduct" means conduct purposefully committed which the actor must have realized as dangerous, done heedlessly and recklessly, without regard to consequences, or of the rights and safety of others, particularly the plaintiff." §13-21-102(1)(b), C.R.S.[2]

Section 13-21-102(1.5)(a), C.R.S.,[3] further states:

> A claim for exemplary damages in an action governed by this section may not be included in any initial claim for relief. A claim for exemplary damages in an action governed by this section may be allowed by amendment to the pleadings only after the exchange of initial disclosures pursuant to rule 26 of the Colorado rules of civil procedure and the plaintiff establishes prima facie proof of a triable issue. After the plaintiff establishes the existence of a triable issue of exemplary damages, the court may, in its discretion, allow additional discovery on the issue of exemplary damages as the court deems appropriate.

"The existence of a triable issue on liability for punitive damages is established by a showing of a reasonable likelihood that the issue will ultimately be submitted to the jury for resolution." *Leidholt v. District Court*, 619 P.2d 768, 771 n.3 (Colo. 1980).[4]

Fed.R.Civ.P. 15(a) provides for liberal amendment of pleadings. Leave to amend

---

[1] The court's jurisdiction over this action arises under the diversity jurisdiction statute, 28 U.S.C. §1332. The parties apparently agree that Colorado's substantive law governs their claims.

[2] Plaintiffs do not claim that Target's conduct was fraudulent or malicious.

[3] In *American Economy Ins. Co. v. William Schoolcraft, M.D., P.C.,* 2007 WL 160951 at *2 (D.Colo. 2007)(unpublished), former Chief District Judge Babcock held that the provisions of §13-21-202(1.5)(a), C.R.S., were applicable in federal court, applying the analysis set forth in *Trierweiler v. Croxton and Trench Holding Corp.*, 90 F.3d 1523 (10th Cir. 1996) for determining whether to apply a state rule of civil procedure. I adopt Judge Babcock's reasoning and holding here.

[4] If a plaintiff establishes the existence of a triable issue on liability for exemplary damages, the jury should ultimately resolve the question of whether the defendant's conduct was "wilful and wanton." *See Mince v. Butters*, 616 P.2d 127, 129 (Colo. 1980). However, the sufficiency of the evidence to justify a punitive damages award is a question of law for the court. *Id.*

is discretionary with the court. *Foman v. Davis*, 371 U.S. 178, 182 (1962); *Viernow v. Euripides Devel. Corp.*, 157 F.3d 785, 799 (10th Cir. 1998). Amendment under the rule has been freely granted. *Castleglenn, Inc. v. Resolution Trust Company*, 984 F.2d 1571 (10th Cir. 1993) (internal citations omitted). "Refusing leave to amend is generally only justified upon a showing of undue delay, undue prejudice to the opposing party, bad faith or dilatory motive, failure to cure deficiencies by amendments previously allowed, or futility of amendment." *Frank v. U.S. West, Inc.*, 3 F.3d 1357, 1365 (10th Cir. 1993).

Target first argues that plaintiffs' motion to amend should be denied as untimely under the Scheduling Order, or because the plaintiffs unduly delayed in filing the motion.

The Scheduling Order deadline to amend the pleadings was November 21, 2006. *See* Scheduling Order [Doc. #17; filed October 6, 2006]. However, "[l]ateness does not of itself justify the denial of the amendment." *Minter v. Prime Equipment Co.*, 451 F.3d 1196, 1205 (10th Cir. 2006)(citing *R.E.B., Inc. v. Ralston Purina Co.*, 525 F.2d 749, 751 (10th Cir.1975)). Instead, I focus on the reasons for the delay.[5] Denial of leave to amend is appropriate "when the party filing the motion has no adequate explanation for the delay." *Frank*, 3 F.3d at 1365-66; *see, also, Durham v. Xerox Corp.*, 18 F.3d 836, 840 (10th

---

[5]The federal district court has required "good cause," under Fed. R. Civ. P. Rule 16(b), to amend a complaint after the Scheduling Order's deadline has passed. *See Colorado Visionary Academy v. Medtronic, Inc.*, 194 F.R.D 684, 688 (D. Colo. 2000) (M.J. Boland) (denying motion to amend complaint for failure to show good cause and defining "good cause" as demonstrating that the scheduling deadlines cannot be met despite a party's diligent efforts). If Rule 16(b)'s good cause requirement is met, the court then considers whether leave to amend should be permitted under Rule 15(a). *Pumpco, Inc.* v. *Schenker International, Inc.*, 204 F.R.D. 667, 668 (D. Colo. 2001)(M.J. Boland).

In *Minter*, the Tenth Circuit declined to decide whether a party seeking to amend its pleadings after the scheduling order deadline must show "good cause" for the amendment under Rule 16(b) in addition to the Rule 15(a) requirements, in part, because of the "rough similarity" between the Rule 16(b) standard and the "undue delay analysis" under Rule 15. *Minter*, 451 F.3d at 1205 n.4.

Cir.1994) ("[U]nexplained delay alone justifies the district court's discretionary decision"); *Fed. Ins. Co. v. Gates Learjet Corp.*, 823 F.2d 383, 387 (10th Cir.1987)("Courts have denied leave to amend in situations where the moving party cannot demonstrate excusable neglect.  For example, courts have denied leave to amend where the moving party was aware of the facts on which the amendment was based for some time prior to the filing of the motion to amend.")

I find that plaintiffs were not dilatory in moving to amend.  Plaintiffs advised Target of their intent to file a motion to amend their pleading to add a punitive damages claim on February 19, 2007.  Plaintiffs then deposed seven Target employees, including Target's Rule 30(b)(6) representative, between March 14, 2007 and the May 10, 2007 discovery deadline.  *See* Doc. #17, at 4; Doc. #83.  Plaintiffs filed their motion to amend six days later.  Because plaintiffs are required by Colorado law to have prima facie proof that Target's conduct which allegedly caused plaintiff Beckie Grabau's injury was wilful and wanton to support a claim for punitive damages, plaintiffs acted reasonably in conducting discovery to obtain evidence to make the threshold showing.  Accordingly, I decline to recommend denial of plaintiffs' motion to amend as untimely or on the ground of undue delay.

Target next objects to the proposed amendment as futile.  The court may deny a proposed amendment as futile.  *Frank*, 3 F.3d at 1365 (citing *Foman*, 371 U.S. at 182)  An amendment is futile if it would not survive a motion to dismiss.  *See Bradley v. Val-Mejias*, 379 F.3d 892, 901 (10th Cir. 2004)(citing *Jefferson Cnty. Sch. Dist. v. Moody's Investor's Services,* 175 F.3d 848, 859 (10th Cir. 1999)).

As discussed previously, exemplary damages are recoverable if the defendant's conduct was wilful and wanton, meaning that it was "purposefully committed" and "which the actor must have realized was dangerous, done heedlessly and recklessly, without regard to the consequences, or of the rights and safety of others, particularly the plaintiff." *See* §13-21-102(1)(b), C.R.S.; *see also Tri-Aspen Construction Co. v. Johnson*, 714 P.2d 484, 488 (Colo.1986)(defining "[w]anton and reckless disregard" for purposes of exemplary damages award as "conduct that creates a substantial risk of harm to another and is purposefully performed with an awareness of the risk in disregard of the consequences")(quoting *Palmer v. A.H. Robins Co.*, 684 P.2d 187 (Colo.1984)).

Plaintiffs allege the following facts in support of their claim for exemplary damages: Target displayed "hand and specialty vacuums" for the first time in the summer of 2005. (Second Amended Compl., at ¶19) Target knew that the display of hand and specialty vacuums on its top shelves created a dangerous condition because it issued a planogram in May 2005 which required each store to, *inter alia*, implement a "1 inch front safety rail" on the display by the marketing plan date of June 12, 2005. (*Id.* at ¶20; Plaintiffs' Motion, Ex. 2) The one inch front safety rail is referenced five (5) times in the planogram along with a diagram depicting the safety rail. (*Id.*)

Megan Christopher, the Superior, Colorado, Target Executive Team Leader, who was responsible for ensuring the proper display of hand and specialty vacuums, received the May 2005 planogram, read and reviewed it, but failed to ensure that store employees installed the safety rail. (Second Amended Compl., at ¶22; Deposition of Megan Christopher, attached to Motion, at 13, 68-69)

Kim Oliver, Target's Rule 30(b)(6) representative and Group Safety Leader, confirms that the Target corporate office implemented a policy that required implementation of a one inch front safety rail in the Summer of 2005, that she reviewed the planogram, and that the Superior Target store failed to install the safety rail. (*Id.* at ¶23; Deposition of Kim Oliver, attached to Plaintiffs' Motion, at 18, 71-72) Ms. Oliver has no knowledge that anyone from Target corporate visually inspected the hand and specialty vacuum display at the Superior Target store during the Summer of 2005. (Second Amended Compl., at ¶26; Oliver Deposition, at 64-67)

Plaintiffs assert that despite Target's knowledge of the dangerous condition – i.e., the display of hand and specialty vacuums on the top shelves in its Superior Target store – and the fact that Target promulgated a policy that required placement of a one inch safety rail to ensure that vacuum cleaners did not fall or roll off the shelf, Target corporate never inspected the hand and specialty vacuum display to ensure compliance with its own policy during the Summer of 2005. Instead, Target relied on Angie Calahan, Target Presentation Team Leader at the Superior Target store, to ensure proper implementation of its hand and speciality vacuum transition planogram. (Second Amended Compl., at ¶25; Deposition of Angie Calahan, attached to Plaintiffs' Motion, at 10, 24-25, 29) Ms. Calahan received the transition planogram, but it's not clear whether she actually reviewed the document. (Calahan Deposition, at 27) Ms. Calahan testified in her deposition that Target does not have a system or checklist to ensure that a planogram or display is in proper working condition and that no Target corporate or store employee ever inspected the display, or met with her to ensure that the transition planogram was implemented properly.

(*Id.*)

Target issued a second transition planogram in October 2005 which also required each store to implement a "1 inch safety rail" in its hand and specialty vacuum display. (Second Amended Compl., at ¶27; Plaintiffs' Motion, Ex. 6)  Ms. Christopher and Ms. Calahan admitted in their depositions that they are familiar with the October 2005 transition planogram; that a safety rail should have been implemented in October 2005, but that such implementation did not occur; and, that there are no systems or checklists in place to ensure that the hand and specialty vacuum display conforms to the specifications of the planogram.  (Second Amended Compl., at ¶29; Christopher Deposition, at 45-46, 61; Calahan Deposition, 31-33, 36, 43-46)

Plaintiffs emphasize that Target did not have a one inch safety rail in place at the Superior Target store when plaintiff Beckie Grabau was allegedly struck and injured by a falling vacuum on February 11, 2006 – eighth months after Target issued the first planogram requiring the safety rail, and four months after distribution of the second transition planogram. (*Id.* at ¶30)  Plaintiffs claim that their factual allegations support a finding that Target recklessly disregarded a known risk which caused permanent injury to Beckie Grabau, thereby entitling plaintiffs to an award of exemplary damages.   (*Id.*)

I find that plaintiffs have failed to establish prima facie proof that Target's conduct was wilful and wanton sufficient to support their claim for exemplary damages, as required by §13-21-102(1.5)(a), C.R.S.  Specifically, plaintiffs fail to allege any facts, or point to evidence, that Target's employees acted purposefully or deliberately in failing to implement the one inch safety rail in the hand and speciality vacuum display.

Plaintiffs rely on *Miller v. Solaglas California, Inc.,* 870 P.2d 559 (Colo. App. 1983) and *Coors v. Security Life of Denver Ins. Co.*, 112 P.2d 59 (Colo. 2005) in support of their claim. In *Miller*, the Colorado Court of Appeals upheld the jury's award of exemplary damages against the defendants in favor of an injured motorist, based on evidence that the defendants deliberately installed windshields without urethane as a matter of policy, despite a GMC manual and industry safety standards requiring the use of urethane when replacing a windshield. 870 P.2d at 569. The court concluded that reasonable jurors could have found that defendant's conduct in installing the windshield retention system "created a substantial risk of harm to others and was purposefully performed with an awareness of the risk and in disregard of the consequences so as to constitute `wanton and reckless conduct.'" *Id.*

In *Coors*, the insured under a life insurance policy sued his insurer after he discovered that the insurer was charging annual premiums in excess of policy terms. The Colorado Supreme Court upheld the trial court's exemplary damages award for bad faith breach of insurance contract based on the trial court's findings that defendant acted unreasonably in: adopting and implementing a scheme to delay notifying policyholders of the overcharges for several months; preparing and sending a false and misleading letter to policyholders; sending a right of review it never intended to honor; and, in attempting to deprive policyholders of their legal rights. 112 P.3d at 66. Notably, there was evidence in the trial court record that defendant's representative specifically acknowledged that the proposed course of conduct "may turn out to be a very bad idea" and potentially viewed as "bad faith" by a court. *Id.* The trial court further found that the defendant knew its

conduct was unreasonable or acted in reckless disregard of the fact its conduct was unreasonable. *Id.*

*Miller* and *Coors* are unavailing to the plaintiffs because the punitive damages awards in those cases were based on the defendants' purposeful conduct. By contrast, the plaintiffs' tendered Second Amended Complaint is devoid of any factual allegations that would support a finding that Target's failure to install the one inch safety rail was a purposeful or deliberate act. A review of the deposition transcripts attached to Target's response shows that none of the individuals deposed by the plaintiffs were aware that the safety rail was not installed until after Beckie Grabau was allegedly injured by a falling vacuum cleaner. (*See* Christopher Deposition, attached to Defendant's Response as Ex. B, at 68-69; Deposition of Deron Feist, attached to Response as Ex. C, at 42-43; Calahan Deposition, attached to Response as Ex. D, at 86-88; Deposition of John Krol, attached to Response as Ex. E, at 22, 47-48; Deposition of Brenda Alexander, attached to Response as Ex. F, at 16-17; Oliver Deposition, attached to Response as Ex. G, at 54-55, 74, 77-78; Deposition of Shawn Stratton, attached to Response as Ex. H, at 15). In addition, there are no allegations or evidence of any prior or subsequent similar incidents of hand or specialty vacuums falling off the shelves at the Superior Target store.[6] (*See* Christopher deposition, at 54; Krol deposition, at 25, 31, 49; Oliver Deposition, at 56, 75)

---

[6]Plaintiffs' additional allegations that Target failed to install the safety rail in the specialty hand and vacuum display at the Superior Target store until February or March 2007, and that three other Target stores failed to implement the safety rails (*see* Second Amended Compl. at ¶¶31-36) does not tend to support a finding of wilful and wanton conduct by Target. Defendant states in its response brief that the safety rail was not installed at the Superior Target until after plaintiffs' expert inspected the display in January 2007 to forestall a spoilation of the evidence claim by the plaintiffs. Moreover, plaintiffs do not allege any facts to show that the failure to install the safety rail in the other Target stores was purposeful, as opposed to a mistake or mere oversight.

Colorado case law makes clear that an award of punitive damages must be based on purposeful action by the defendant. *See Frick v. Abell*, 508 P.2d 852, 854 (Colo. 1979) ("The requirements for the award of exemplary damages are met if the defendant, while conscious of his conduct and cognizant of existing conditions, knew, or should have known, that the injury would probably result from his acts"); *American Economy Ins. Co.*, 2007 WL 160951 at **3-4 (applying Colorado law and finding that defendants' allegations were sufficient to support amendment of counterclaim to add a claim of punitive damages based, in part, on plaintiff's adjusters' deposition testimony that all of the actions they took were deliberate); *accord Pettingell v. Moede,* 271 P.2d 1038, 1041 (1954) (holding, in action by automobile guest under former guest statute, that ordinary or simple negligence should be considered as resulting from a passive mind, while a willful and wanton disregard is the result of an active and purposeful intent ). Mere negligent conduct cannot serve as the basis for an exemplary damages award. *Tri-Aspen Construction Co.*, 714 P.2d at 448.

Plaintiffs attempt to establish their prima facie case of wilful and wanton conduct by arguing that Target's failure to install the one inch safety rail in the hand and specialty vacuum display after the second planogram was issued in October 2005, shows that Target was on notice of a dangerous condition, and knew or should have known that injury would result, but repeatedly failed to remedy the dangerous condition.

"While mere negligence cannot support an award of exemplary damages, . . ., repeated failure to correct a known dangerous condition may convert mere negligence into wanton and reckless disregard." *Jacobs v. Commonwealth Highland Theatres*, *Inc.*, 738

P.2d 6, Colo.App. 1986).

In *Jacobs*, the Colorado Court of Appeals found that the plaintiff presented a prima facie case of wanton and reckless disregard supporting an award of exemplary damages in a premises liability action, based on evidence that: the step from which plaintiff fell had been the cause of similar falls on ten prior occasions in the preceding four years; defendant's district manager was aware of each prior incident; and, that the problem was repeatedly reported to the defendant's home office, but no satisfactory corrective measures were taken until after plaintiff was injured. 738 P.2d at 9-10. The court concluded that a jury could reasonably infer that the defendant's failure to act under the circumstances was purposeful. *Id.* at 10.

Similarly, in *Bodah v. Montgomery Ward & Co., Inc.*, 724 P.2d 102 (Colo.App. 1986), the Colorado appellate court upheld an exemplary damages award based on defendant's wanton and reckless conduct where the record indicated that on at least three occasions prior to the incident resulting in the plaintiff's injury, the defendant was notified that a dangerous condition involving a significant threat of injury was created by the re-engagement of the defendant's electrical system while a person was repairing the store's neon sign.[7] *Id.* at 104. On each prior occasion, defendant's management stated that the situation involving the electrical switches would be corrected; however, there was no evidence that defendant had taken any steps to alleviate the danger. *Id.* at 103-04.

The present case is distinguishable from *Jacobs* and *Bodah* because plaintiffs do

---

[7] The same switches which controlled the flow of electricity to the sign also controlled the flow of electricity to the cash registers in the store. *Bodah*, 724 P.2d at 103.

not allege, nor is there any evidence to show, that Target had any knowledge of prior incidents involving hand or speciality vacuum cleaners falling off an upper shelf and endangering store patrons. The fact that Target recognized a potential safety issue and promulgated a planogram on two separate occasions to address that concern, but neglected thereafter to ensure the installation of the safety rail in its Target Superior store before plaintiff's injury, does not show a <u>purposeful</u> failure to act by Target. *See Jacobs*, 738 P.2d at 10.

Because plaintiffs have failed to persuade me that their proposed punitive damages claim would survive a motion to dismiss, it is

**RECOMMENDED** that Plaintiffs' Motion for Leave to File Second Amended Complaint [Doc. #87; filed May 16, 2007] be **DENIED** as futile.

**Within ten days after being served with a copy of the proposed findings and recommendation, any party may serve and file written objections to the proposed findings and recommendation with the Clerk of the United States District Court for the District of Colorado. The district judge shall make a de novo determination of those portions of the proposed findings or specified recommendation to which objection is made. The district judge may accept, reject, or modify, in whole or in part, the proposed findings or recommendations made by the magistrate judge. The judge may also receive further evidence or recommit the matter to the magistrate judge with instructions.**

**Failure to make timely objections to the magistrate judge's recommendation may result in a waiver of de novo review of the recommendation by the district judge**

**and may also waive the right to appeal from a judgment of the district court based on the findings and recommendations of the magistrate judge.**

Dated June 30, 2007.

                                  BY THE COURT:

                                  s/ O. Edward Schlatter
                                  O. EDWARD SCHLATTER
                                  United States Magistrate Judge